The opinion of the Court was delivered by
O’Neall, J.
In this case, the whole of the facts proved show that the defendant intended to defeat, delay, and hinder the plaintiffs, in the recovery of their debt.
The whole of the defendant’s estate, real and personal, two houses and lots in Aberdeen, and eighteen slaves, conveyed to Josiah N. Walton, in trust to pay the plaintiffs and other creditors, have been in some way disposed of, and nothing has therefrom been realized to the plaintiffs. The defendant’s interfer-' ence to induce Josiah N. Lawton to refuse to act as trustee under the deed to secure the plaintiffs, is another circumstance strongly indicative of fraud. The declaration of the defendant that that deed was fraudulent, the purchase of eight of the slaves under the marshal’s sale, and the subsequent transfer of them to Mrs. Lawson — the purchase by the defendant of two others — the sending them off to Texas, and the alleged subsequent sale of them, without any account of the proceeds — the defendant’s interference to prevent the plaintiffs’ attorney to assert their claims for the remaining slaves iti the possession of *156 Taylor, clearly show, when added to the facts previously stated, as plain a case of fraud on the part of an insolvent debtor as ever I saw in a court of justice. Still, it may be, if the case rested alone on these facts, after a jury had passed upon them, and come to a conclusion against the plaintiffs, that we might hesitate long in sending it back. But it is a great relief, when there is to be a refusal of liberty on legal grounds, to find, that in applying such legal, rules, we in fact do no wrong to any one, but rather promote the ends of justice.
The Judge, it seems, told the jury, that, as to the slaves sold by the marshal, under a lien senior to the trust or mortgage deed, and by the purchaser transferred to the defendant’s wife, “ the plaintiff’s title was extinguished, and if by a new title, by the marital right, Lawson again acquired a property in the ne-groes, it was not a fraud on the plaintiffs’ rights under the mortgage, if Lawson sold them.” This instruction supposed that the trustee accepted the deed, and I suppose this was the fact, although it appears that subsequent to its execution, at the instance of the defendant, he attempted to repudiate it. Taking this to be so, I think the instruction was wrong; for the sale by the marshal did not extinguish the plaintiffs’ title under the mortgage; it defeated it pro hac vice ; but when the grantor removed the effect of that sale, as by purchasing, or another gave him a fresh title, as by conveying to his wife, the plaintiffs, or rather their trustee, became thereby entitled to the property discharged of the lien. This is, I think, fully demonstrated by all the cases, which declare, that a man cannot aver against his own title. So, too, when a grantor having no title, or a bad title, or an incumbered title, subsequently acquires, perfects or disincumbers the title, the purchaser takes all he has gained. Harvin vs. Hodge, Dud. 23; Reeder ads. Craig, (it should be Garey,) 3 McC., 411. This being so, the defendant’s grantee, the trustee for the plaintiffs, had all the rights which the defendant acquired subsequent to the marshal’s sale. If the rights of the trustee, given expressly to secure the plaintiff’s debt, have been defeated, delayed or hindered by the act of the defendant, it becomes a fraud which *157 they may urge against him. It is true, the defendant and his property were in Mississippi; but putting it out of that jurisdiction, to defraud the plaintiffs, is very properly an objection to his discharge, as an insolvent debtor, everywhere.
In Thomson vs. Linam, 2 Bail. 131, the defendant was charged with the removal of slaves out of this State, as an objection to his discharge under the Prison Bounds Act. The Judge below instructed the jury that it was no objection. The jury, however, thought otherwise, and the Court of Appeals sustained the verdict; and by Harper, J., said, “ It is supposed the issue in this case was immaterial, because the Prison Bounds Act, while it provides, that no one shall be entitled to its benefits, who shall fail to make a true schedule of his property, makes no provision for a prisoner’s having fraudulently secreted, or made way with his property. The Act would certainly be miserably defective, if it were thus constructed. But it seems to me to be a matter of strict and necessary inference, from the provisions of the Act, that such a fraud shall disqualify a party from being entitled to its benefits.” That case is this, with the single exception that the property there was carried from this State, and here from Mississippi. The different localities cannot alter the principle.
As to the ground which complains of the charge in relation to the sale of the houses and lots to Dobbs, although it may be true, that the plaintiffs, under the trust deed, may recover, yet it by no means follows that that discharges the defendant from the consequences which may attach to him, as a fraud, in making this sale. Why did he sell, knowing he had executed a deed in trust for the payment of his debts ? To defeat it, is the plain and obvious answer. Is not this a fraud 1 Beyond all doubt it is, although it may not, in the end, turn out to be successful, for it is calculated to delay and hinder them in the recovery of their debt. A bill in Equity, or an ejectment in Mississippi, for the recovery of the means of paying a debt, is in no sense leaving a debt free from difficulty in its collection. If a debtor makes these extraordinary means necessary by his *158 act, how can he be otherwise regarded than thus guilty of a fraud ?
The motion for a new trial is granted.
Withers, Whitner and Glover, JJ., concurred.

Motion granted.